Cite as 2019 Ark. 344
# SUPREME COURT OF ARKANSAS
**No.** CR–19–312

| | |
|---|---|
| PAUL M. GORDON<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** November 21, 2019<br><br>PRO SE APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT; PRO SE MOTIONS TO MODIFY AND SEAL RECORD AND TO FILE BELATED BRIEF [NO. 30CR–10–261]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br><u>AFFIRMED; MOTION TO MODIFY AND SEAL RECORD DENIED; MOTION TO FILE BELATED BRIEF MOOT</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Paul M. Gordon appeals the denial of his pro se petition for writ of error coram nobis filed in the trial court. After the appeal was briefed, Gordon filed a motion in which he sought to modify the record by removing portions that he alleges the trial court incorrectly considered and to seal the record because it includes documents that fully name the victims without redaction. Gordon additionally filed a motion in which he sought permission to file a belated reply brief. We deny his motion to modify and seal the record. Gordon fails to provide an adequate basis to remove any of the documents from the record or to seal it.[1] Because Gordon does not demonstrate that the trial court abused its discretion

---

[1]There is no provision in our rules for sealing the record to prevent disclosure of a victim's full name on appeal in criminal proceedings when the victim is a minor.

in declining to issue the writ, we affirm, and Gordon's request to file a belated reply brief is moot.

A writ of error coram nobis is an extraordinarily rare remedy. *Wooten v. State*, 2018 Ark. 198, 547 S.W.3d 683. Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id*. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the circuit court and that, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id*. The writ is issued only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Wade v. State*, 2019 Ark. 196, 575 S.W.3d 552. It is available to address errors found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id*. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Wooten*, 2018 Ark. 198, 547 S.W.3d 683. The petitioner must state a factual basis to support his or her allegations of error—and not simply rely on conclusory allegations—in order to state a cause of action that would support issuance of the writ. *See Alexander v. State*, 2019 Ark. 171, 575 S.W.3d 401.

The standard of review of an order entered by the trial court on a petition for writ of error coram nobis is whether the trial court abused its discretion in granting or denying the writ. *Bryant v. State*, 2019 Ark. 183, 575 S.W.3d 547. An abuse of discretion occurs when the court acts arbitrarily or groundlessly. *Id*. There is no abuse of discretion in the

denial of error coram nobis relief when the claims in the petition were groundless. *Id*. A hearing is not required if the petition clearly has no merit, either because it fails to state a cause of action to support issuance of the writ or because it is clear from the petition that the petitioner did not act with due diligence. *Ramirez v. State*, 2018 Ark. 32, 536 S.W.3d 614.

In 2011, Gordon entered a negotiated plea of guilty to three counts of rape, and he received consecutive sentences of 420 months' imprisonment on each count for an aggregate sentence of 1260 months' imprisonment. After entering the plea, Gordon filed a petition under Arkansas Rule of Criminal Procedure 37.1 (2018) that the trial court found was untimely filed. This court granted a motion to dismiss the appeal of that order by per curiam order on January 24, 2013. In his 2017 coram nobis petition,[2] Gordon alleged that he was mentally ill when he entered his plea and that the plea was coerced because he was suffering from depression. He alleged that pursuit of the writ had been delayed by his mental illness and that once he regained competence, he filed the petition. He also included numerous allegations of ineffective assistance of counsel and trial error that he further contended contributed to the depression that served as the basis for his claims of incompetence and a coerced guilty plea as grounds for the writ.

Gordon attached several exhibits to the petition in support of his claims, and he also filed two pro se motions for production of records in which he sought a court order to obtain various other documents that he alleged he had unsuccessfully tried to obtain and

---

[2]In instances when the judgment of conviction was entered on a plea of guilty or nolo contendere or when the judgment of conviction was not appealed, the petition for writ of error coram nobis is filed directly in the trial court. *McJames v. State*, 2010 Ark. 74.

3

that would further his application for the writ. The trial court entered an order denying the coram nobis petition, and it referenced and attached four exhibits to the order. The exhibits included a probable-cause affidavit, the sentencing order in the case, an unannotated copy of the transcript of the same plea hearing that Gordon had included as an exhibit to his petition, and the transcripts from two interviews with Gordon conducted by the police. Gordon's second motion for production of documents had sought copies of his interviews with the police. It is these four exhibits that Gordon asks this court to remove from the record in his motion. Whether or not the trial court properly considered the exhibits in making its findings, the exhibits are a part of the order and serve to establish what was considered by the court.

On appeal, in addition to alleging error by the trial court in its consideration of these documents, Gordon alleges error in the trial court's failing to conduct a hearing. Gordon also asserts error by the trial court in its conclusions that he failed to demonstrate insanity at the time of trial, a coerced guilty plea, and diligence. Gordon asserts that some of the documents considered by the trial court in reaching its decision could only have been obtained through ex parte communication with the prosecuting attorney or "independent investigation" and should therefore have been excluded; that his petition stated two claims cognizable for the writ, and he was therefore entitled to a hearing; that some of the order's exhibits were for the purpose of establishing his guilt rather than addressing the issues raised in the petition; and that the trial court should not have considered the record from the Rule 37 proceedings or any post-plea mental-health reports. Gordon also alleges that the trial court did not address his claims of insanity or coercion—or he disputes the findings in that

4

regard— reiterating the claims he made in the petition. Finally, Gordon reasserts his claims from the petition that his mental illness should serve to excuse any delay in bringing the coram nobis petition and establish diligence.

Not every manifestation of mental illness demonstrates incompetence to stand trial. *Bryant*, 2019 Ark. 183, 575 S.W.3d 547. The fact that Gordon had a mental illness does not in itself establish his incompetence, and when a petitioner seeking the writ makes no assertion that there was any evidence concerning his incompetence extrinsic to the record, hidden from the defense, or unknown at the time of trial, grounds based on the petitioner's incompetence fail. *Id.* Gordon did not allege any such hidden evidence of his incompetence. He instead contends that his attorney was ineffective for failing to challenge the report recommending that he was fit to proceed and that the trial court committed error in not sua sponte holding a hearing on the report and his fitness to proceed.

Gordon likens his situation to the one in *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. In *Newman*, there was cognitive impairment that was hidden at the time of trial by scoring errors made during Newman's mental evaluation. The evaluating doctor only later admitted the errors, and that cognitive impairment, in combination with Newman's severe depression, was sufficient to support a claim of impaired thinking and incompetence. 2009 Ark. 539, 354 S.W.3d 61 (acknowledging that without the discovery of the scoring errors, the situation would have been akin to the one in *Echols v. State*, 354 Ark. 414, 125 S.W.3d 153 (2003), in which the petitioner's defense team was aware of the petitioner's history of mental treatments at the time of trial and the factual basis was not sufficient to

support a claim for the writ). Gordon does not allege that he had any similar hidden deficiency or that his IQ was much lower than the evaluation indicated.

Gordon complains that both his attorney and the trial court were aware of his depression and attempted suicide, and he alleges that the facts establishing his depression and attempted suicide alone were sufficient to establish his incompetence, despite a professional report to the contrary. He offers nothing other than his own self-serving evaluation of his mental state at the timet he entered his plea in support of this claim that he was incompetent. The evaluations and reports that he attaches to his petition were either available before trial or were only relevant concerning his claim that his condition delayed his bringing the coram nobis petition.

The trial court determined that Gordon was not diligent in bringing the petition. While Gordon argues that the court should not have considered the record of the Rule 37 proceedings, it was not an error for the trial court to consider the complete record in his criminal case, including any transcripts of posttrial hearings or documents that were filed after his trial. The filing of the Rule 37.1 petition alone demonstrates that Gordon had recovered sufficiently from his depression to act by early 2012, more than five years before the coram nobis petition was filed. It was therefore not an abuse of discretion, whether the trial court improperly considered other material in that regard or not, for the trial court to find that the petition should be denied because Gordon had not been diligent. *Makkali v. State*, 2019 Ark. 17, 565 S.W.3d 472 (holding that due diligence is required in making an application for coram nobis relief, and in the absence of a valid excuse for delay, the petition can be denied on that basis alone).

6

The trial court also correctly found that Gordon had failed "to establish that his depression interfered with his ability to appreciate his litigation position or to make rational decisions concerning the litigation during the entirety of the relevant time period." Given that the trial court had considered the issue of Gordon's competency to proceed, without allegations of facts that showed his incompetency and were unknown or hidden at the time of trial, the issue may not be revived after trial through a petition for the writ. *Westerman v. State*, 2015 Ark. 69, 456 S.W.3d 374. To the extent Gordon raised claims of ineffective assistance and trial error, those claims were not cognizable in proceedings for the writ. *Alexander*, 2019 Ark. 171, 575 S.W.3d 401. His two claims of error falling within the recognized categories of error are both dependent on his allegation that he was not competent, and because he did not allege any hidden fact that may have amplified the depression to the point of being debilitating, he did not state adequate facts to support those claims. Because Gordon's petition was clearly without merit, he cannot show an abuse of discretion in the denial of the petition without a hearing. *Bryant*, 2019 Ark. 183, 575 S.W.3d 547.

Affirmed; motion to modify and seal record denied; motion to file belated brief moot.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. Gordon's error coram nobis petition states and supports a cognizable claim for relief, and the trial court was required to hold a hearing on Gordon's allegations.

Gordon's error coram nobis petition alleged that he was insane when he entered his guilty plea. According to Gordon, he was arrested on December 29, 2010, while a patient

7

at Levi Hospital, a mental-health facility in Hot Springs, Arkansas. Gordon states that he was removed from his recovery plan and deprived of his medication while sitting in jail; the medications were later re-started, but with narcotics to keep Gordon sedated. At one point while Gordon was awaiting trial, a detention officer petitioned the court to have Gordon involuntarily committed for mental-health treatment. The detention officer's petition noted that Gordon had lost a considerable amount of weight since his incarceration due to lack of eating, that when Gordon was asked why he would not eat, Gordon stated that "he just wanted to end it and nobody would let him." The petition also stated that a "concerned cellmate" had produced a plastic wrap containing 28 clonidine hydrochloride and 2 Celexa—"the assumption was presumably he was going to take all at once to cause his heart to malfunction." Gordon was demonstrably suicidal.

Gordon's attorney did file a motion for a psychiatric evaluation, but the State's examiner determined that Gordon was competent to stand trial. Gordon vigorously disputes both the conclusions and the alleged observations contained in the examiner's report. Gordon specifically contends:

> This report was fabricated by an examiner that created an opinion about me through information that he received from the prosecutor. There was not an examination of my condition at the time. In the very short time that he was in the same room as I, he deliberately avoided acknowledging my need for help, which can be detected in this report. I let him know I was continually having suicidal plans in order to relieve my misery, but he apparently believed I was only trying to get a report from him that would benefit me[.]

Gordon maintains that he never received an actual hearing on his competency to stand trial. *See Jacobs v. State*, 294 Ark. 551, 553–54, 744 S.W.2d 728, 729 (1988) ("[A] due process evidentiary hearing is constitutionally compelled at any time that there is 'substantial

8

evidence' that the defendant may be mentally incompetent to stand trial."). The case proceeded to trial, and Gordon eventually pled guilty on August 4, 2011, the date his trial had been scheduled. Gordon says that he had unsuccessfully attempted suicide just hours before entering his plea.

Insanity at the time of trial or a plea is supposedly one of the categories for cognizable claims in Arkansas error coram nobis proceedings. *Davis v. State*, 2018 Ark. 290, 558 S.W.3d 366. Gordon's allegations about his depressive mental condition fit squarely within this category of cognizable relief. *See, e.g.*, *Newman v. State*, 2014 Ark. 7 (after error coram nobis petition was denied without hearing by trial court, reversed and remanded for hearing by this court, trial court abused its discretion in determining petitioner had been competent to stand trial). Attached to his petition is a wealth of documentation supporting the allegations contained therein. In this situation, a hearing is required. "If [petitioner] fails in his burden of proof, or if the matters proven do not establish compelling circumstances requiring the extraordinary relief afforded by a writ of error coram nobis, then such a determination will be based on a full hearing, consideration of the allegations, and application of the principles of law to the findings of fact." *Scott v. State*, 2017 Ark. 199, at 9–10, 520 S.W.3d 262, 268. Holding otherwise in a case like this continues to eviscerate the writ of error coram nobis. If Gordon's claim does not warrant a hearing, it is difficult to conceive of a claim that would.

I dissent.

*Paul M. Gordon*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.